John Targowski  (Bar No. 226053)
**Targowski Law Office**
475 Washington Blvd
Marina Del Rey, CA 90292
Telephone:  (310) 920-9177
Email: jtargo@icloud.com

Attorney for Defendant
RYAN SCOTT BRADFORD

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00397(A)-JLS |
|---|---|
| Plaintiff, | The Honorable Josephine L. Staton |
| v. | **DEFENDANT RYAN SCOTT BRADFORD'S SENTENCING MEMORANDUM** |
| RYAN SCOTT BRADFORD, | Sentence Date: April 19th, 2024 at 9:30AM |
| Defendant. | |

Defendant RYAN SCOTT BRADFORD, through counsel John Targowski, hereby files his Sentencing Memorandum.

DATED: April  5th, 2024                     Respectfully Submitted,

                                                         _____/s/_____
                                                         JOHN TARGOWSKI
                                                         Attorney for Ryan Scott Bradford

I.     PROCEDURAL HISTORY

Mr. Bradford was named in a single defendant criminal complaint (dkt 1) filed with this Court on July 28th, 2023 charging him with conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 USC section 846 and felon in possession of ammunition in violation of 18 USC section 922(g)(1) for conduct that allegedly occurred in his Reseda, California residence on July 27th, 2023. He pled not guilty before the Honorable Michael R. Wilner on July 28th, 2023 and was detained in MDC Los Angeles where he remains to this day.

On August 9th, 2023 a three count indictment (dkt 9) was filed with this Court charging Mr. Bradford with violations of 21 USC section 846, conspiracy to distribute and possess with intent to distribute methamphetamine, 21 USC section 841(a)(1),(b)(1)(C) possession with intent to distribute methamphetamine, and 18 USC section 922(g)(1). He pled not guilty before the Honorable Pedro V. Castillo on August 17, 2023 and remained detained.

On November 1st, 2023 a four count First Superseding Indictment ("FSI") (dkt 20) was filed with this Court adding an additional count 4 charging Mr. Bradford with a violation of 18 USC section 922(o)(1) for possession of 8 machine gun conversion devices commonly referred to as "auto sears." Mr. Bradford was arraigned on the FSI on November 9th, 2023 before the Honorable Brianna Fuller Mircheff where he again entered not guilty pleas to all counts and remained detained.

On January 4th, 2024 Mr. Bradford signed a plea agreement with the government that was filed on the same day (dkt 27) and changed his plea to from not guilty to guilty on counts 3 and 4. He changed his plea before this Court on January 11th, 2024 and the Court set a sentence hearing date on April 19th, 2024.

Mr. Bradford participated in a pre-sentence interview with USPO Christopher Anderson on January 30th, 2024 and a pre-sentence report ("PSIR) (dkt 33)was disclosed to the parties on March 14, 2024 along with a disclosed sentence recommendation letter (dkt 32) that recommended a 37 month sentence. The

government filed a sentencing memorandum (dkt 34) earlier today calling for a high end guideline sentence of 47 months.

## II. THE PSIR

### a. Sentencing Guideline Calculations

Mr. Bradford concurs with the advisory sentencing guideline range of 37 to 46 months. This calculation is based upon a base offense level of 20 and -3 for acceptance of responsibility for a total offense level of 17 and a criminal history category of IV, based upon a total criminal history score of 8.

### b. Mr. Bradford possessed eight auto sears machine gun conversion devices but one was destroyed by the ATF during field testing in their West Virginia examination center

As a part of its investigation, the ATF test fired eight auto sears machine gun conversion devices seized from Mr. Bradford at their West Virginia firearms and ammunition examination center. One of the devices that intended to be used with a Glock 17 pistol that was manufactured by Mr. Bradford on his home-based 3D printer and marked as exhibit 1F by the AFT broke after only two and a half magazines of ammunition were fired through the weapon in which the auto sear was installed. (See pg 3, Exh C ATF Report of Technical Examination). While Mr. Bradford does not dispute that these home-made devices were made for the exclusive use of rendering a semi automatic firearm into a fully automatic one, his craftsman ship was rather poor and ability of these devices to successfully render a firearm fully automatic can be called into question. Mr. Bradford was not a professional or credentialed gunsmith and was experimenting with manufacturing these devices with home-based equipment readily available to him and not specifically designed to manufacture firearms or their components. Mr. Bradford would request that a footnote or addendum be made in the PSIR in paragraph 27 concerning the eight auto sears devices regarding the destruction of one of these devices during law enforcement field testing.

### III. THE 3553(a) FACTORS

#### a. Mr. Bradford's childhood and upbringing with an emotionally detached mother

In general terms, "emotional detachment" refers to a person's inability to be emotionally present for another person. This can include a variety of tactics and manifestations, but the common outcome is that the person on the receiving end feels a sense of absence where there should be emotional presence and engagement.[1] In a the PSIR interview Mr. Bradford stated that the emotional love and support he received from his mother "*could have been better*" and that he has not spoken to her in five years, despite living down the street from her and making several attempts to contact her. (PSIR para 62). He confirmed this emotional detachment in his letter to the Court where he wrote that she "*…went of of her way to make me feel unwelcome in her home.*" (Exh A).

As a parenting style, emotional detachment is present in families where parents may have been unresponsive in moments when emotions were expected. Emotionally detached parents lack the ability to offer their emotional reactions in the face of their child's emotional needs. Emotional availability assessment models, such as the one based on the scholarly research of Dr. Zeynep Biringen, emerged in the late 1990s and early 2000s to help measure the emotional interactions between parents and their children. What this scholarship makes apparent is that the emotional unavailability of parents, if left unaddressed, has a potentially profound and lasting impact on the children of these parents.

Parents who are emotionally unavailable are often immature and psychologically affected themselves. Emotionally unavailable parents have a host of their own problems that might go back as far as their own childhood. There is often a deficit in parents who are unable to meet the emotional and psychological needs of their child. In a sense, some emotionally void parents deserve sympathy as they are often emotionally burned adults who have no way of coping with their own emotional and psychological

---

[1] Biringen Z. (2008). Emotional Availability (EA) Scales; 4th Edition. emotionalavailability.com/wp-content/uploads/2009/08/Emotional-Availability-Trainings-Description.pdf

needs. In Mr. Bradford's case, he remarks in the PSIR that his mother was a "*drunk*" (*Id.*)  In households where emotional detachment reigns, parents engage in negative patterns of behavior due to lack of self-awareness, often affecting the child in more ways than one, while the child sinks further and further into despair.

Mr. Bradford did not see his mother as someone who could be relied upon to protect and guide him, or to whom he could turn to learn about life. He further describes his upbringing in his letter to the Court wherein he states:

> "*I had a pretty terrible upbringing from a mom who did not love me unconditionally and treated me as if my existence ruined her life.*" (Exh A).
> "*I had top stay with my mom and many bad memories happened there, some in the Court documents I saw, other things happened too*." (Exh A).

The children of emotionally unavailable parents, such as Mr. Bradford appears to be, develop into emotionally needy teens and adults who are longing for the love, security, and affection they never received. Rejection by the family, which is the child's first and fundamental "community," sets the stage for another social tragedy: Rejected children tend gradually to drop out of normal community life. "Research consistently has shown that those youth whose bond to their parents is weak are more likely to be delinquent." The professional literature is replete with findings of a connection between future delinquency and criminal behavior and the abuse and neglect visited upon children by their parents.[2]

There are many psychological reactions to the form of emotional abandonment Mr. Bradford experienced reported in the literature. Among them are attachment disorders, low self-esteem, and anxiety. This is because the child is prevented from attaching to his primary caregivers; he does not know how to connect with anyone else.[3] This child is likely to be withdrawn and isolated. He may keep a very close eye

---

[2] Jeffrey Fagan and Sandra Wexler, "Family Origins of Violent Delinquents," *Criminology* 25, no. 3 (1987): 643-669.

[3] N., Pam M.S., "Psychological Effects of Child Abandonment," in *PsychologyDictionary.org*, January 10, 2016.

on the activity going on around him, but he is unlikely to engage or try to join in. When a child with attachment problems is upset, he will not seek comfort from others, nor will he accept comfort if it is offered. The perpetual outcast and loner, this child may grow up unable to empathize with others. [4]

### b. Mr. Bradford's Substance Abuse

Around the time of his commission of these offenses, Mr. Bradford was sober from heroin and opioids for approximately 6 years, having successfully completed a five-month residential treatment program for substance abuse disorder at the Tarzana Treatment Center in 2015 (PSIR para 86), where he met his fiancée Adriana Gutierrez. Mr. Bradford was regular but not daily user of methamphetamine around this time, though he desires substance abuse treatment via the BOP's RDAP program and would request that the Court provide a referral to do so.

### c. Mr. Bradford's Vocational Skills and History of Employment

Mr. Bradford is a high school graduate and received specialized training as a semi truck driver. He kept this employment for about a year but lost his commercial driver license due to a DUI conviction he sustained operating his personal vehicle. In his letter to the Court, Mr. Bradford states "*I was good at truck driving school and held the job for about a year. I loved it. It gave me pride and purpose and was the best period of my life. I proved people wrong about me."* (Exh A).

### d. Mr. Bradford's Sincere Remorse

In his lengthy and candid letter to the Court and at allocution at sentencing, Mr. Bradford expressed (and will express) sincere remorse for his criminal conduct. He states:

> "*I wanted to tell you first and foremost that I'm guilty of having things I shouldn't have had, namely the ammunition and the equipment to make gun parts." (*Exh A).
> **"*I know your Honor has to sentence me to prison and I understand that I deserve to be punished. I accept that. (*Exh A).

---

[4] Fagan and Wexler, 1987.

e. **Mr. Bradford's relationship with and belief in National Socialism and Third-Riech Ideology**

The PSIR is replete with references to Mr. Bradford's possession of materials concerning Adolf Hitler, the Third Riech and National Socialism (ie Nazis) as well as communications that he engaged in that used anti-semitic and racist language. Mr. Bradford has no additions, corrections are deletions concerning these matters in the PSIR, nor does the government mention these references and communications in its sentencing position. However Mr. Bradford does discuss this topic extensively in his letter to the Court. He states:

> *"...I began spending a lot of unproductive time on the internet reading stuff having to do with world war two and the nazis. I thought I was uncovering some greater truth that no one wanted to address, but later on I realize that I was just being exposed to propaganda, which took me time to realize was BS. I got caught up in an identity that I find today to be odious....I got too comfortable associating with fringe elements online. I guess I just wanted to fit in and be a part of something meaningful. I lost my way. I knew already a long time ago, even when this case was going on, that this stuff was harmful to me and others. I guess I just felt angry at the world because I couldn't do all the things that I loved and this was a way to feel good about it all. I really took it far and am ashamed at how people are afraid of me and the evil things said about me on the news. I understand why they are afraid of me and those things, but those things do not represent who I am and I'm trying to live my life differently once this is over."* (Exh A).

## VI.     CONCLUSION

For the foregoing reasons and analysis, Mr. Bradford respectfully requests the court impose a low end guideline sentence of **37 months**, with credit for time served since his incarceration on July 27th, 2023.

DATED: April  5th, 2024                                                 Respectfully Submitted,

                                                                                           /s/                    
                                                                                  JOHN TARGOWSKI
                                                                                  Attorney for Ryan Scott Bradford

## **EXHIBITS**

A. Brandon Scott Gear's Letter to the Court
B. Adriana Gutierrez's Letter to the Court (Defendant's Fiancée)
C. ATF Report of Technical Examination dated August 18th, 2023